IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

In re:
BUSINESS COMMUNICATIONS OF
VIRGINIA, INC., d/b/a Etelsuperstore.com,

                             Debtor.

GHASSAN HABBOUSH,

               Appellant/Cross-Appellee,

v.

KEITH PHILLIPS, *Trustee*,

               Appellee/Cross-Appellant.

Civil Action Number 3:08cv670

**MEMORANDUM OPINION**

      This matter is before the Court on appeal from the Order and associated Memorandum Opinion (collectively "the Judgment") of the United States Bankruptcy Court for the Eastern District of Virginia ("Bankruptcy Court") entered on August 7, 2008, awarding judgment in favor of Keith L. Phillips ("Trustee") against Ghassan Habboush ("Appellant") in the amount of $99,130.97. The parties have both filed extensive opening and reply briefs in support of their respective positions. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and argument would not aid in the decisional process. Based on an extensive review of the record in this case and for the reasons stated herein, the Court will affirm in part and remand in part the Judgment of the Bankruptcy Court.

# I. BACKGROUND

A. *Procedural and Factual History*

Business Communications of Virginia, Inc., d/b/a/ Etelsuperstore.com, ("Debtor") filed a chapter 7 bankruptcy petition in the Bankruptcy Court on November 5, 2004. Trustee was appointed and continues to serve as Debtor's trustee in bankruptcy. Trustee commenced this adversary proceeding on November 3, 2006, seeking to avoid transfers made by Debtor to Appellant and to recover property of the estate.

Prior to its bankruptcy, Debtor operated a cellular phone and pager business in Richmond, Virginia. Debtor's principals were Milad Habboush and George Habboush, nephews of Appellant. Over the course of its existence, Debtor engaged in highly questionable business practices and frequently transferred or conveyed substantial assets to one or more members of the Habboush family for little or no consideration. As a result, Milad Habboush was denied discharge from personal liability in the bankruptcy proceedings because of his failure to maintain or preserve Debtor's corporate books and his transfer of assets of Debtor with intent to hinder, delay, or defraud creditors. Additionally, the Bankruptcy Court entered a monetary judgment on June 13, 2008 against Habib and S.H.H. Habboush, George and Milad Habboush's parents, based upon assets improperly transferred to them by Debtor.

Appellant's involvement in Debtor's business was no less dubious than that of his other family members'. Of particular concern was the especially unorthodox lending relationship between Debtor and Appellant. On October 29, 2004, one week prior to filing its bankruptcy petition, Debtor transferred $14,500 ("preference payment") to Appellant to repay a July 22, 2004 loan in the amount of $14,000 made by Appellant to Debtor. Appellant and Debtor had also exchanged large sums of money on a number of other previous occasions. The following schedule reflects money transfers from Debtor to Appellant from August 1, 1998, to the date of Debtor's bankruptcy on November 5, 2004:

| Date | Amount | Check Notation |
|---|---|---|
| 8/1/1998 | $50,000.00 | "loan payoff" |
| 12/8/1998 | $60,000.00 | "loan" |
| 3/24/2000 | $40,000.00 | "repay loan" |
| 2/28/2002 | $100,000.00 | "Dogwood North Retirement" |
| 6/26/2002 | $30,000.00 | [No Memo] |
| 9/26/2002 | $1,000.00 | "Pay back down payment on house" |
| TOTALS | $281,000.00 | |

The following schedule reflects money transfers by Appellant to Debtor from March 12, 2000, to the date of Debtor's bankruptcy:

| Date | Amount | Check Notation |
|---|---|---|
| 3/12/2000 | $40,000.00 | "loan" |
| 7/7/2000 | $30,000.00 | "loan" |
| 2/8/2002 | $18,000.00 | [No Memo] |
| 6/14/2002 | $20,000.00 | "loan" |
| 6/14/2002 | $10,000.00 | "loan" |
| TOTALS | $118,000.00 | |

Appellant also transferred substantial funds to Debtor's principals on a handful of occasions, purportedly treating the principals and Debtor as interchangeable parties. The following schedule reflects money transfers by Appellant to the principals of Debtor from October 23, 2002, to the date of Debtor's bankruptcy:

| Date | Amount | Payee | Check Notation |
|---|---|---|---|
| 10/23/2002 | $10,000.00 | Milad Habboush | "Edward Ave." |
| 12/20/2002 | $7,869.03 | Wachovia Bank (Cashier's Check paid to George Habboush) | "Quash" |
| 3/17/2003 | $15,000.00 | George Habboush | "loan Quash St." |
| 1/30/2004 | $2,500.00 | George Habboush | "loan" |
| 7/12/2004 | $3,000.00 | George Habboush | "personal loan" |
| TOTALS: | $38,369.03 | | |

At trial, Trustee sought the recovery of the $14,500 preference payment made October 29, 2004, along with a monetary judgment representing unpaid loans from Debtor to Appellant in the net amount of $163,000 (the $281,000 total indebtedness less the $118,000 total amount transferred by Appellant to Debtor). Appellant argued that both the $50,000 August 1, 1998 transfer and the $60,000 December 8, 1998 transfer were uncollectible because they were barred by Virginia's statute of

3

limitations. Additionally, Appellant argued that any liability he may have to the bankruptcy estate should at least be offset by the $38,369.03 worth of payments he made to Debtor's principals, Milad and George Habboush.

**B.** *Bankruptcy Court Judgment*

On August 7, 2008, the Bankruptcy Court entered judgment against Appellant in the amount of $99,130.97, consisting of (1) the $14,500 preference payment made on October 29, 2004 by Debtor to Appellant[1] and (2) $84,630.97 of indebtedness owed by Appellant to Debtor's bankruptcy estate pursuant to 11 U.S.C. § 542(b). In determining the $84,630.97 award, the Bankruptcy Court made four separate findings. First, it rejected Appellant's argument that the statute of limitations barred Trustee's claim for recovery of the $50,000 and $60,000 transfers made in 1998, finding instead that Trustee was "not attempting to collect these specific payments," but rather was "seeking to collect the defendant's [total] indebtedness to [D]ebtor." *Bus. Commc'ns of Va. v. Habboush*, 393 B.R. 133, 142 (E.D. Va. 2008). The Bankruptcy Court explained further that even "if the two transfers are treated as [specific] loans to [Appellant], then he repaid those loans by his transfers to [D]ebtor in years 2000 and 2002." *Id.* Thus, if the two 1998 loans were already repaid, Trustee is effectively seeking only the recovery of specific loans made in 2000 and later, meaning they were made within the statute of limitations and are fully collectible. *Id.* Therefore, the Bankruptcy Court refused to exclude as barred the two 1998 transfers from its calculation of Appellant's total debt.

Second, however, the Bankruptcy Court determined that the August 1, 1998 $50,000 transfer was a repayment by Debtor to Appellant of a previous loan, as evidenced by the check's notation,

---

[1] The $14,500 preference payment award is not at issue on appeal, so the Bankruptcy Court's analysis as to that transfer is omitted.

4

"loan payoff." *Id*. Accordingly, the Bankruptcy Court reduced Appellant's total indebtedness during the years preceding bankruptcy from $281,000 by $50,000 to $231,000.

Third, the Bankruptcy Court noted that "during the same general period preceding bankruptcy, [Appellant] made total repayments of $118,000 to [D]ebtor." *Id.* Finding that Appellant was entitled to credit for this $118,000 against his withdrawals from Debtor, the Bankruptcy Court further reduced Appellant's indebtedness from $231,000 to $113,000.

Finally, the Bankruptcy Court allowed Appellant to exercise his right of offset for the $28,369.03 he transferred to George Habboush in four separate transactions, but not for the $10,000 he transferred to Milad Habboush on October 23, 2002. The Bankruptcy Court recognized that the notations on all five checks "indicate they were all personal loans," but it noted that Appellant testified at trial that "the checks to George were repayment by [Appellant] toward the $100,000 loan of February 28, 2002." *Id.* There was, however, no such testimony regarding the $10,000 payment to Milad Habboush, so the Bankruptcy Court did not include that transfer in its offset calculation. Finding that there was "no evidence" indicating that the payments made to George Habboush were anything other than repayment of the $100,000 loan, the Bankruptcy Court gave Appellant "the benefit of the doubt regarding the offset by these payments [and] allowed an offset for $28,369.03 due to [Appellant's] payments to George Habboush." *Id.* Therefore, the court reduced Appellant's total indebtedness of $113,000 by $28,369.03 down to $84,630.97. This amount, combined with the $14,500 preference payment, represents the $99,130.97 judgment awarded to Trustee.

**C.** *Arguments on Appeal*

In his appeal, Appellant argues that the Bankruptcy Court erred by ruling that the Virginia statute of limitations did not bar the recovery of the $60,000 transfer made by Debtor to Appellant on December 8, 1998. Appellant would have the Court remove this $60,000 from its calculation of

Appellant's indebtedness. Under this theory, the equation would be as follows: $281,000 total indebtedness *minus* the $50,000 August 1998 loan repayment *minus* the $60,000 December 1998 uncollectible/time-barred transfer *minus* the $118,000 transferred by Appellant to Debtor between 2000 and 2002. Therefore, before considering Appellant's right of offset of the $38,369.03 transferred to George and Milad Habboush, Appellant argues his total indebtedness should actually be $53,000, instead of the $113,000 calculated by the Bankruptcy Court. Inclusive of the $14,500 preference payment and the $28,369.03 offset, Appellant believes he owes only $39,130.97 instead of the $99,130.97 awarded to Trustee by the Bankruptcy Court.

In his cross-appeal, Trustee argues that the Bankruptcy Court erred by offsetting from amounts due to Debtor's bankruptcy estate the $28,369.03 Appellant transferred to George Habboush in a series of four payments between 2002 and 2004. Debtor, therefore, would have the Court increase his total award from $99,130.07 to $127,500.

Accordingly, there are two issues for this Court to address:

(1) Did the Bankruptcy Court err by ruling that the 1998 $60,000 transfer was not barred by the statute of limitations?

(2) Did the Bankruptcy Court err by allowing Appellant to offset $28,369.03 from amounts owed to Debtor's bankruptcy estate?

## II. JURISDICTION

This Court has jurisdiction to hear appeals from "final judgments, orders, and decrees" of the Bankruptcy Court. 28 U.S.C. § 158(a). The Bankruptcy Court's August 7, 2008 Judgment constitutes a final judgment, and Appellant timely noted this appeal on August 18, 2008. Therefore, this matter is properly before this Court.

## III. STANDARD OF REVIEW

On appeal, the Court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. The Court "review[s] the bankruptcy court's legal conclusions *de novo* and its factual findings for clear error." *In re Paschall*, 408 B.R. 79, 84 (E.D. Va. 2009) (quoting *In re Harford Sands Inc.*, 372 F.3d 637, 639 (4th Cir. 2004)); *see* Fed. R. Bankr. P. 8013. In cases where the issues present mixed questions of law and fact, the Court will apply the clearly erroneous standard to the factual portion of the inquiry and *de novo* review to the legal conclusions derived from those facts. *Gilbane Bldg. Co. v. Fed. Reserve Bank*, 80 F.3d 895, 905 (4th Cir. 1996).

## IV. ANALYSIS

**A. *The Bankruptcy Court Did Not Commit Clear Error in Imposing Liability on Appellant for the $60,000 Transfer Made to Debtor on December 8, 1998.***

Appellant argues that the Bankruptcy Court erred in its determination that the Virginia statute of limitations does not bar recovery of the December 8, 1998 transfer made by Appellant to Debtor. Whether the Bankruptcy Court erred in imposing this liability is a question of fact. If Trustee is attempting to collect a specific loan made more than five[2] years prior to Debtor's bankruptcy, then recovery would be barred. The Bankruptcy Court found explicitly that "Trustee is not attempting to collect [this] specific payment[]." *Habboush*, 393 B.R. at 142. Whether Trustee was indeed attempting to collect the specific payment is squarely a question of fact, which the Court reviews for

---

[2] The parties disputed at trial what the applicable Virginia statute of limitations period actually should be – the five-year voluntary conveyance limitation or the three-year oral contract limitation. Obviously, a transaction made outside of the five-year voluntary conveyance window would also be outside of the three-year oral contract window, and since the December 8, 1998 transfer was made six years prior to Debtor's filing for bankruptcy, no further discussion of which limitation period applies is necessary here because, if any period applies at all, six years is outside of both options advanced by the parties.

clear error. Fed. R. Bankr. P. 8013. The clearly erroneous standard requires this Court "to give great deference to the bankruptcy court with respect to findings of fact." *In re Frushour*, 433 F.3d 393, 406 (4th Cir. 2005). Under this standard, "if the bankruptcy court's factual findings are plausible in light of the record viewed in its entirety, a reviewing court may not reverse even if it would have weighed the evidence differently." *Id.* (quoting *Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004)).

Viewing the record in its entirety, the Court finds that the Bankruptcy Court's factual finding as to what exactly Trustee seeks to recover is plausible. As the Bankruptcy Court explained, "[t]he money transactions [between Appellant and Debtor] illustrate, to say the least, the highly unorthodox business methods of the Habboushes." *Habboush*, 393 B.R. at 141. As evidenced by the bizarre ways in which the Habboushes and Debtor lent money to each other, it is indeed plausible that Appellant and Debtor understood that they maintained an open, rolling account of indebtedness and not a loan by loan, transaction-specific arrangement. As such, Trustee, who "steps into the shoes of the debtor and only accedes to the debtor's interest in the property [at issue]," would not seek to recover specific payments as might be barred by the statute of limitations, but would, instead, seek to recover Appellant's total indebtedness to Debtor. *In re Sys. Eng'g & Energy Mgmt. Assocs., Inc.*, 284 B.R. 226, 231 n.3 (Bankr. E.D. Va. 2002). Therefore, this Court cannot find clear error in this portion of the Bankruptcy Court's Judgment.

Further, even if the Court were to find implausible the Bankruptcy Court's finding that the Trustee is seeking Appellant's total indebtedness to Debtor, the Court still would not find clear error because the Bankruptcy Court found further that, even "if the two transfers are treated as loans to [Appellant], then he repaid those loans," and Trustee is thus seeking to collect only specific loans made

within the statute of limitations that are "not time barred."[3] *Habboush*, 393 B.R. at 142. Accordingly, the Bankruptcy Court did not commit clear error as to the December 1998 $60,000 transfer, and this Court will affirm the Bankruptcy Court's Judgment in that regard.

**B.** *The Bankruptcy Court Failed to Conclude Whether the Requisite Mutuality Existed so as to Make Available the Right of Offset to Appellant for the $28,369.03 He Paid to George Habboush.*

Trustee argues that the Bankruptcy Court erred in offsetting $28,369.03 from amounts due by Appellant to Debtor's bankruptcy estate. With limitations, a creditor may "offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the [bankruptcy] case." 11 U.S.C. § 553. "To be mutual, the debts must be in the same right and between the same parties, standing in the same capacity." *In re Thompson*, 182 B.R. 140, 152 (Bankr. E.D. Va. 1995). In this case, it is undisputed that the $38,369.03 Appellant transferred to George and Milad Habboush between October 2002 and July 2004 occurred pre-petition. As Appellant does not contest the Bankruptcy Court's decision not to offset the $10,000 transfer made to Milad Habboush on October 23, 2002, the only amount of offset at issue is $28,369.03, representing the transfers made by Appellant to George Habboush.

---

[3]The Court notes for the sake of completeness that if the three-year oral contract statute of limitations applies, then the March 24, 2000 transfer of $40,000 by Appellant to Debtor would indeed be outside of three years from the November 2004 petition date, and would, therefore, be time barred. Even after treating the series of transfers from Appellant to Debtor in 2000-2002 as loan repayments, $32,000 of indebtedness would remain from the $40,000 March 2000 transfer after crediting Appellant with the full $118,000 he transferred to Debtor ($110,000 toward the $50,000 and $60,000 1998 loans and the remaining $8,000 toward the March 2000 loan). Therefore, if the Bankruptcy Court had adopted a specific loan repayment theory instead of a general, total indebtedness theory, Appellant would stand to maintain possession of this additional $32,000 if indeed the correct statutory period is three years. Though no explicit finding is made in its Opinion, the Bankruptcy Court appears to adopt the five-year voluntary conveyance limitation period in this alternative scenario, a legal conclusion the Court would review *de novo*. As Appellant appeals only the Bankruptcy Court's inclusion of the $60,000 December 1998 transfer in his liability to Debtor's bankruptcy estate and does not appeal any portion of the $40,000 March 2000 transfer, the Court need not review the Bankruptcy Court's alternative scenario decision as to which statute of limitations period applies.

Appellant argues that the debts between Appellant and George were "mutual" as between Appellant and Debtor for the purposes of § 553 under a reverse corporate veil piercing theory because George Habboush treated Debtor as his alter-ego. Courts have addressed this type of triangular situation before and have accepted the reverse corporate veil piercing theory in certain circumstances. The Court cannot, however, affirm or deny the Bankruptcy Court's Judgment as to the offset payments because there is no indication in the Judgment that the Bankruptcy Court conducted a mutuality of rights and debts analysis under § 553 and did indeed decide to reversely pierce the corporate veil in favor of Appellant. The Court will not speculate as to why the Bankruptcy Court gave Appellant "the benefit of the doubt regarding the offset," and it will remand the matter to the Bankruptcy Court for a finding on whether the requirements of § 553 were satisfied so as to allow the offset of $28,369.03 from the amounts owed by Appellant to Debtor's bankruptcy estate.

## V. CONCLUSION

For the foregoing reasons, the Bankruptcy Court's Judgment will be affirmed in part as to the inclusion of the 1998 $60,000 transfer in Appellant's indebtedness to Debtor's bankruptcy estate, and it will be remanded in part for a further determination on whether to offset the $28,369.03 Appellant transferred to George Habboush.

An appropriate Order shall issue.

September 30, 2009                       /s/
DATE                             RICHARD L. WILLIAMS
                                     SENIOR UNITED STATES DISTRICT JUDGE